IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALVIN KEITH HOLLOWAY,          :
#272035,                       :
    Plaintiff,           :
                               :
vs.                            :          CIVIL ACTION 13-217-CB-M
                               :
RODNEY BREWER, *et al.*,        :
    Defendants.          :
                               :

## REPORT AND RECOMMENDATION

This § 1983 action, filed by Alvin Keith Holloway, an
Alabama prison inmate, proceeding *pro se,* was referred to
the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.2(c)(4), and is now before the Court on
Plaintiff's Complaint (Doc. 1), Defendants Rodney Brewer,
Joel Broadhead and Steven Moore's Answer and Special Report
(Docs. 16, 17), which the Court has converted into a Motion
for Summary Judgment (Doc. 19), and Plaintiff's Brief in
Opposition to Defendants['] Response Filed on November 25,
2013. (Doc. 22).  After consideration of these pleadings,
and for the reasons set out below, it is recommended that
Defendants' Motion for Summary Judgment be granted and that
Plaintiff's action be dismissed with prejudice.

## I.   Facts and Proceedings

Based on the record before it, the Court summarizes
the parties' relevant allegations as follows.

Plaintiff is an Alabama Department of Corrections ("ADOC"), inmate currently serving a twenty-year sentence for Murder and a concurrent four-year sentence for Assault II at Holman Correctional Facility ("Holman") in Atmore, Alabama. (Doc. 17-1 at 1). As Defendants, Plaintiff names Officer Joel Broadhead, Officer Rodney Brewer, and Officer Steven Moore. (Doc. 1 at 7). According to the ADOC Inmate Handbook, inmates are "expected to be clean shaven and neat. Mustaches and beards are not permitted." (Doc. 17-2 at 2).

On November 7, 2011, while escorting Plaintiff to his cell, Sergeant Larry Bailey told Plaintiff that he needed to shave. (Doc. 1 at 5). Plaintiff said he needed a razor, so Sergeant Bailey offered him the razor that he'd been using already. Plaintiff refused to use that razor and informed Sergeant Bailey that he could write him a disciplinary report for refusing. (*Id.*).

At this point, Plaintiff contends that Sergeant Bailey "walked off and then returned with 4 or 5 more officers and ask [sic] me if I was going to shave[.] I said no not with that razor[.] They then walked off and returned a few minutes later with helmets on and bulletproof vest[s]. A [sic] electric shield[,] pepper spray[,] and billy clubs[.] [F]irst they opened my tray door and sprayed inside at me

with the pepper spray then they opened my door and ran at me electric shield first." (Doc. 1 at 5). Plaintiff contends that Defendant Brewer was leading with the shield and "when [he] fell to the floor all of them commenced to hitting [him] with there [sic] sticks and fist [sic] and kick [sic] with their feet[.]" (*Id.*). Plaintiff states that he rolled to his stomach and they put "the cuffs on [him] behind [his] back and shackled [his] feet[.] All the time they was still hitting [him] with their fist [sic] and sticks. They struck [him] about 8 or 10 times . . . . They grabbed [him] by an arm and [as he] was thrown into the elevator[, he] was punched in the back of the head and knocked to the floor then stomped and kicked in [his] side and head." (*Id.*). Plaintiff also contends that Defendant Brewer slapped him and Defendant Moore slammed his head into the gate outside the shift office before holding him down and shaving his face. Plaintiff further alleges that upon returning to his cell, it had been "stripped of his mattress, blanket, sheets and all of [his] personal property and made [him] give them [his] shorts and shoes . . . and maintained [him] in this position in this cold[,] stripped cell for the next 15 days." (*Id.* at 6).

Defendants' Answer and Special Report presents the facts differently. In their Answer, Defendants generally

deny that anyone hit, punched, kicked or struck Plaintiff in any way during the cell extraction and plead the defense of, *inter alia,* all applicable immunities,[1] as well as the defense of unclean hands.

After the first refusal to shave with Sergeant Bailey, Correctional Officers Scottie English and Rodney Brewer ("Defendant Brewer") prepared to perform a search on Plaintiff's cell, at which point Plaintiff was told again he needed to shave and was instructed to "cuff up to the rear for a cell search." (Doc. 17-3 at 2; *see also* Docs. 17-4, 17-5, 17-6, 17-7). Plaintiff again refused to shave and to cuff up. (*Id.*). At this point, Defendant Brewer again notified Sergeant Bailey of Plaintiff's refusal. Sergeant Bailey returned to Plaintiff's cell and instructed him a third time to cuff up and shave but Plaintiff refused and stated, "F*** y'all, come in here and get me." (*Id.*). Sergeant Bailey exited the segregation unit and notified Warden III, Tony Patterson, of Plaintiff's insubordination. (*Id.*). Warden Patterson instructed Sergeant Bailey to assemble an extraction team to remove inmate Holloway from his cell in order to conduct a search of his cell and to

---

[1]    Given that the Court finds that Plaintiff fails to raise a viable claim of excessive force or any other Constitutional tort, the Court will not engage in a discussion of immunity of the Defendants.

ensure Plaintiff received a regulation shave. (*Id.*).
Thereafter, Sergeant Bailey returned to Plaintiff's cell
with an extraction team consisting of Defendants Brewer,
Broadhead and Moore, and Correctional Officers English, and
Fountain. (*Id.*).

Arriving at Plaintiff's cell, they opened the tray
hole door and noticed that Plaintiff had concocted a
substance of soap, water and/or baby oil and spread it all
over the floor of his cell to make it slippery and
difficult for the extraction team to remove him. (*Id.*).
In addition to the slippery floor, Plaintiff had torn up
his mattress and wrapped the inner lining around his body
as makeshift body armor, and he hung either a sheet or the
outer lining of his mattress from the light fixture in
front of his cell door to prevent the extraction team from
seeing inside the cell. (*Id.*). Officer English instructed
Plaintiff again to cuff up and come out of his cell
willingly, but Plaintiff refused and defied their request
by throwing an unidentified liquid out of the tray door
opening. (*Id.*). Sergeant Bailey attempted to administer a
one-second burst of the chemical agent, "Sabre Red" to
Plaintiff's facial area, but was unsuccessful due to the
sheet that was hanging from the light fixture. (*Id.*).
Moments later, Defendant Brewer, holding the electric

shield, led the extraction team into Plaintiff's cell as he jumped onto his bed and kicked Defendant Brewer in the chest causing Brewer to slip and fall to the floor. (*Id.*). Plaintiff then jumped from the bed swinging his fists at the remaining officers until he slipped on his own slippery-floor concoction. (*Id.*). On his way down, he continued to swing at the officers and landed on his left ear. (Docs. 17-4, 17-5, 17-6, 17-7). He remained combative until the officers were collectively able to subdue him in leg restraints and handcuffs. (*Id.*).

Once Plaintiff was under control, the extraction team escorted him to the P&Q Dayroom where he received a regulation shave without incident. (Doc. 17-3 at 2-3; Docs 17-4, 17-5, 17-6, 17-7). During the shave, Plaintiff remained restrained, and no additional force was used to complete the shave. (*Id.*).

Following the shave, Plaintiff was escorted to the Health Care Unit for a medical assessment due to the altercation. (*Id.*). During the assessment, the nurse noted some edema[2] and some bruising to his left ear, a minor abrasion to his collarbone, and minor lacerations with

---

[2]     "Edema is swelling caused by excess fluid trapped in your body's tissues." *Edema Definition,* MayoClinic.org, http://www.mayoclinic.org/diseases-conditions/edema/basics/definition/con-20033037 (last visited Jan. 10, 2014).

minimal bleeding to his left shoulder.  (Doc. 17-3 at 6).

Overall, Plaintiff denied having pain and was able to

ambulate without difficulty.  (*Id.*).  After the medical

assessment, and without further incident, Plaintiff was

escorted back to his cell, which had apparently been purged

of any contraband and/or excess items due to Plaintiff's

combative and insubordinate behavior.  (Docs. 17-4, 17-6 at

3, 3).  The Court notes that while on stripped cell status,

inmates are allowed to keep blankets, sheets, clothing and

hygiene products; however, the record reflects that neither

the Defendants nor the members of the extraction team made

the determination to place Plaintiff on stripped cell

status, nor did they determine what items would be removed

from Plaintiff's cell.  (Docs. 17-4, 17-6, 17-7 at 3, 3,

2).

        In the days following the altercation, Plaintiff had

an x-ray of his injuries, which came back as normal and

unremarkable, as no fractures were present.  (Doc. 17-8 at

6).  Around the same time, an internal investigation was

also conducted by Correctional Captain James Powers, who

determined that the "force used to get [Plaintiff] to

comply with orders given was justified."  (Doc. 17-3 at

17).  Furthermore, each member of the extraction team has

submitted affidavits swearing that not only did they have

nothing to do with Plaintiff being placed on stripped cell status, that no member of the extraction team had "billy clubs"[3] during the extraction, and that at no time did any member of the extraction team ever hit, kick, punch or otherwise strike Plaintiff during the removal. (Docs. 17-4, 17-5, 17-6, 17-7 at 3, 2, 2, 2).

For relief, Plaintiff requests "compensatory damages of fifty thousand dollars from each defendant, punitive damages of ten thousand dollars from each defendant, preliminary and permanent injunction against retaliation,[4] and a trial by jury on all issues triable by jury." (Doc. 1 at 9).

On January 6, 2014, Plaintiff filed his Brief in Opposition to Defendants['] Response Filed on November 25, 2013. (Doc. 22). In his brief, Plaintiff alleges that Defendants' "decision to assemble a cell extraction team to remove him by force when he refused an order to shave, [] was unauthorized excessive force . . . [and] was malicious and sudistic [sic] unauthorized use of force with intent to

---

[3] The Court interprets Plaintiff's use of "billy clubs" to mean police batons. Billy clubs are not permitted at Holman and state issued police batons are not used during extractions in order to maintain officers' safety.

[4] Plaintiff seeks injunctive relief for retaliation; however, he fails to make any claim for retaliation or allege any facts sufficient to indicate retaliatory activity by Defendants, or that retaliation is likely and not purely speculative.

cause him physical harm and violated his right to be protected from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution." (Doc. 22 at 2). Plaintiff further asserts the unfounded and conclusory allegation that because Defendants "failed to record their cell extraction of him by using a video recording device contrary to federal law[,]" they have failed to sufficiently prove that they did not hit, kick or punch him after he was handcuffed. (*Id.*). Without a video recording of the extraction, Plaintiff claims he is "clearly entitled to any and all of the relief requested by him."

The Court notes that in conjunction with his brief, Plaintiff has provided no evidentiary supplementation indicating that it is the Alabama Department of Correction's requirement and protocol to video all cell extractions. Likewise, Defendants have provided no evidence of DOC policy or protocol reflecting a video requirement of cell extractions.

## II. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a

matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50

(1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

### III. Discussion

#### a. Excessive Force

The language of the Eighth Amendment regarding "cruel and unusual punishment" manifests the general intention to prohibit the unnecessary and wanton infliction of pain without penological justification. *Ort v. White,* 813 F.2d 318, 321 (11th Cir. 1987) (citations omitted). However, the Supreme Court has noted that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, *Rhodes v. Chapman,* 452 U.S.337, 349 n. 14 (1981); therefore, courts should not freely substitute their judgment for that of officials who have chosen a course of discipline in an often dangerous and unruly environment. *Ort* at 322 (*citing Whitley v. Albers,* 475 U.S. 312 (1986).

To establish a viable Eighth Amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering, or was totally

without penological justification. *Ort* at 322; *see also Rhodes,* 452 U.S. at 346. Unnecessary and wanton infliction of pain is distinguished from punishment and defined as an "immediate coercive measure undertaken by a prison official, necessitated by a spontaneous violation of a prison rule or regulation." *Ort* at 322. This situation dictates that prison officials undertake immediate action to end the violation without the luxury of hindsight and reflection. *Id.* The final determination "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* A higher standard with a more culpable intent requirement is applied where a plaintiff claims the use of excessive force. *Flowers v. Bennett,* 135 F.Supp. 2d 1150, 1155 (N.D.Ala. 2000). Thus, under *Whitley* and its progeny, a plaintiff must prove that those who used force against him acted with malicious purpose, *see Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002), and that a requisite amount of force was used against him. *Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992). His evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the

infliction of pain.  *Brown v. Smith,* 813 F.2d, 1187, 1188
(11th Cir. 1987).

In determining malicious purpose and whether the use
of force was wanton or unnecessary, the *Whitley* Court
established five factors to consider: 1) the need for the
application of force; 2) the relationship between the need
and the amount of force used; 3) the threat reasonably
perceived by the prison official; 4) any efforts made to
temper the severity of a forceful response; and 5) the
extent of the injury suffered by the inmate.  475 U.S. at
321.

Plaintiff contends that because he did not want to
shave with an old razor, that he was maliciously and
sadistically sprayed with pepper spray, punched, kicked,
slapped, snatched around, and beaten with billy clubs by
Defendants until he was held down and force-shaved.  (Doc.
1 at 5).  The Court concludes that Plaintiff fails to
establish the existence of essential elements to his claim,
i.e., malice and/or sadistic intent on the part of the
Defendants, sufficient to withstand Defendants'
submissions, and which would allow a jury to return a
verdict in his favor. His allegations that the lack of a
video recording entitles him to his requested relief are
conclusory and wholly unsupported by the record.  Such

conclusions cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). In the event it can be found that Plaintiff's allegations are not conclusory, the Court will engage in the five-factor *Whitley* test set out above.

Applying the five *Whitely* factors, it again becomes clear that Plaintiff has failed to meet his burden in pleading his claim for excessive force.  First, the Court concludes that there was clearly a need for the application of force given Plaintiff's refusal to comply with every order given to him by every prison official during the course of the altercation.  The Eleventh Circuit has long held that using force to compel compliance with a valid order satisfies the first factor regarding a need for an application of force. *Brown,* 813 F.2d at 1189.  When ordered to obtain a regulation shave by Sergeant Bailey and Defendant Brewer, Plaintiff became defiant with threats and profanity and refused to comply with their valid orders.

In addition to his refusal to shave, Plaintiff became combative toward the officers, thereby necessitating the valid use of force to maintain order in the prison.

Second, as for the relationship between the need and the amount of force used, it is clear that the amount of force used did not exceed the amount necessary to subdue Plaintiff. Given that Plaintiff had booby-trapped his cell and attacked the extraction team as soon as they entered his cell, Defendants' corresponding force was minimal, even though more extreme measures likely would have been justified. Once Plaintiff slipped on his own booby-trapped floor, Defendants merely held him in place while leg irons and handcuffs were secured. Plaintiff was then escorted to the dayroom and given a regulation shave without additional force. Further, despite the fact that doing so may have been justified given the assaultive behavior of Plaintiff, none of the Defendants hit, kicked, punched, slapped, or struck Plaintiff out of malice in any way during the extraction. (Docs. 17-4, 17-5, 17-6, 17-7). Additionally, the medical records documenting Plaintiff's injuries do not support Plaintiff's conclusion that excessive force was used to subdue him. Most importantly though, an investigation was done regarding the incident and it was found by Captain James Powers that the amount of force used

to get Plaintiff to comply with orders was justified.
(Doc. 17-3 at 17).  Thus, the second factor is satisfied.

Third, Defendants reasonably perceived Plaintiff and
his insubordination as a threat.  It is well settled that
"when an inmate refuse[s] to obey a proper order, he is
attempting to assert his authority over a portion of the
institution and its officials.  Such refusal and denial of
authority places the staff and other inmates in danger."
*Helton v. Burks,* 2013 WL 6081764 (M.D. Ga. Nov. 19,
2013)(*citing Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir.
1984). Further, the threat perceived by Defendants was
fully realized when Plaintiff became assaultive toward
them.  The fact that Plaintiff shredded his mattress, booby
trapped the floor of his cell, threw an unidentified liquid
at the extraction team, kicked Defendant Brewer in the
chest, and wrestled with the team once he was on the floor
confirms that Defendants were reasonable and justified in
perceiving Plaintiff as a threat and in using the
appropriate amount of force to subdue him.

Fourth, Defendants' efforts to temper the severity of
their force were sufficient, although minimal, since the
amount of force used was likewise minimal.  Originally,
without using any force at all, Sergeant Bailey and
Defendant Brewer each gave Plaintiff multiple opportunities

to comply with their orders so that force would not become
necessary.  Plaintiff refused to comply and essentially
taunted the officers with profanity saying that they would
have to come in the cell and get him if they wanted him to
shave.  Once Defendants realized that Plaintiff would not
comply with their orders, they used only the amount of
force necessary to restrain Plaintiff.  They did not even
take Plaintiff to the ground; he tripped on his own booby
trap and fell to the floor where they were finally able to
restrain him.  After the regulation shave was completed,
the team took Plaintiff to the Health Care Unit for a body
chart and to be treated for the surface injuries he
sustained during the altercation, i.e., bruising, edema,
and abrasions with minimal bleeding.  (Doc. 17-8 at 3).
Plaintiff also received X-rays for the right side of his
rib cage and the left side of his skull, both of which came
back as "normal [with] no fracture or [] dislocation" and
"unremarkable."  (Doc. 17-8 at 5-6).  The record reflects
Plaintiff was seen by a healthcare professional within
minutes of the altercation, thereby satisfying the fourth
"temperance" factor.

    Fifth, and finally, it is apparent from the record
that Plaintiff's injuries were not severe and he could be
released back to DOC from the Health Care Unit once his

body chart was complete. More notable than the injury evaluation, though, is the fact that Plaintiff denied having pain when examined by the LPN. (Doc. 17-8 at 3). While Plaintiff did exhibit significant bruising, he had no broken bones or long term injuries as evidenced by the "normal" and "unremarkable" X-ray results, thereby satisfying the fifth and final *Whitley* factor.

In light of these five factors, it is apparent that Defendants did not act in a bad faith, malicious, or sadistic fashion. Moreover, Plaintiff's assertions are not substantially probative, but merely conclusory, and it is well settled that a conclusion cannot be taken as true. *Ashcroft,* 556 U.S. 662, 678-79; *see also Leigh,* 212 F.3d 1210, 1217 ("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman,* 739 F.2d 553, 556-57 (a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that his allegations do not support a reliable inference that a wanton infliction of pain was imposed by the extraction team; thus there is no dispute sufficient enough that a trier of fact could return a verdict in Plaintiff's favor. *Stanfil v. Talton,* 851

F.Supp.2d 1346, 1371 (M.D. Ga. 2012)(*citing Whitley,* 475
U.S. at 322).

The Court cannot and does not condone physical force
used against prisoners if designed for the purpose of
causing "unnecessary and wanton infliction of pain." *Ort,*
813 F.2d at 321. "The infliction of pain in the course of
a prison security measure, [however], does not amount to
cruel and unusual punishment simply because it may appear
in retrospect that the degree of force authorized or
applied for security purposes was unreasonable, and hence
unnecessary in the strict sense." *Id.* at 323. Bearing in
mind all of the factors enumerate above, the Court finds
that Defendants did not use excessive force on Plaintiff in
an effort to wantonly inflict unnecessary pain, but merely
to maintain order in the prison and over the unruly
Plaintiff who purposefully created a hostile situation
toward Defendants by booby-trapping his cell. Accordingly,
the force used by Defendants Brewer, Broadhead and Moore
against Plaintiff was not excessive and Plaintiff's Eighth
Amendment claim for excessive force fails as a matter of
law.

b. Conditions of Confinement

Plaintiff alleges in his Complaint that his right to
be free from cruel and unusual punishment was violated when

he was made to stay in a cell that "had been stripped of my mattress, blanket, sheets, and all of my personal property and made me give them my shorts and shoes that I had on [and] maintained me in this position in this cold stripped cell for the next 15 days." (Doc. 1 at 6).

The constitution does not mandate comfortable prisons, *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones. *Helling v. McKinney,* 509 U.S. 25, 31 (1993). Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to guarantee the safety of the inmates. *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind: "deliberate indifference" to inmate health or safety. *Wilson v. Seiter,* 501 U.S. 294, 298, 302-03 (1991). Deliberate indifference lies somewhere between the poles of negligence at one end and purpose or knowledge at the other, and is equated to recklessness. *Farmer v. Brennan,* 511 U.S. 825 (1994). "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.*

Based on the submissions from Defendants, it is clear
that none of them had any knowledge of any facts that gave
rise to a real or potential serious risk of harm to
Plaintiff.  As a general rule, vicarious liability is not
available in § 1983 claims, barring actual involvement by
Defendants.  *Cottone v. Jenner,* 326 F.3d 1352, 1360 (11th
Cir. 2003).  In this case, none of Defendants were present
when the cell was searched or stripped, nor did they make
any determination as to what items were removed from the
cell.  (Docs. 17-4, 17-5, 17-6).  Further, they did not
make the determination that Plaintiff should be placed on
stripped cell status, or for how long he should remain on
stripped cell status.  *Id.*  Regardless, inmates on stripped
cell status are allowed to keep a blanket, sheets,
clothing, and hygiene items.  (Docs. 17-4, 17-5, 17-6, 17-
7).  Even though Defendant Brewer recalls that Plaintiff
was able to keep all hygiene products, a blanket, sheets,
and his clothing, none of the Defendants actually took part
in stripping Plaintiff's cell, thus, they could not have
been aware of any real or potential substantial risk of
serious harm.  Moreover, Plaintiff fails to plead any
evidence which reflects Defendants' recklessness toward
him.  Further, there is nothing in the record sufficient to
have led Defendants to believe that any of the

determinations made by their supervisors may violate Plaintiff's constitutional rights. Plaintiff's claim regarding the conditions of his confinement is due to be dismissed.

## IV. Conclusion

Based on the foregoing reasons, this Court concludes that Defendants Rodney Brewer, Joel Broadhead, and Steven Moore are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding

or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 15th day of January, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE